IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| VERNON F. M., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:23-CV-185-JFJ |
| | ) | |
| MARTIN J. O'MALLEY,[1] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Plaintiff Vernon F. M. seeks judicial review of the decision of the Commissioner of the Social Security Administration denying his claim for disability benefits under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i) and 1382c(a)(3). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. For reasons explained below, the Court affirms the Commissioner's decision denying benefits. Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

**I.     General Legal Standards and Standard of Review**

"Disabled" is defined under the Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C.

---

[1] Effective December 20, 2023, pursuant to Federal Rule of Civil Procedure 25(d), Martin O'Malley, Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of 42 U.S.C. § 405(g).

§ 423(d)(3). A medically determinable impairment must be established by "objective medical evidence," such as medical signs and laboratory findings, from an "acceptable medical source," such as a licensed and certified psychologist or licensed physician; the plaintiff's own "statement of symptoms, a diagnosis, or a medical opinion [is not sufficient] to establish the existence of an impairment(s)." 20 C.F.R. §§ 404.1521, 416.921. *See* 20 C.F.R. §§ 404.1502(a), 404.1513(a), 416.902(a), 416.913(a). A plaintiff is disabled under the Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is currently working; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"), whether the impairment prevents the claimant from continuing her past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)-(v). If a claimant satisfies his burden of proof as to the first four steps, the burden shifts to the Commissioner at step five to establish the claimant can perform other work in the national economy. *Williams*, 844 F.2d at 751. "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Id.* at 750.

In reviewing a decision of the Commissioner, a United States District Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See id.* A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* A court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.     Procedural History and the ALJ's Decision

Plaintiff, then a 46-year-old male, applied for supplemental security income benefits on November 22, 2019, alleging a disability onset date of September 12, 2019. R. 22, 171-176. Plaintiff alleged inability to work due to conditions including two heart attacks. R. 195. Plaintiff's claim was denied initially on September 9, 2020, and on reconsideration on January 13, 2021. R. 63-95. Plaintiff then requested a hearing before an ALJ, and the ALJ conducted a telephonic hearing on December 2, 2021. R. 37-62. The ALJ issued a decision on July 12, 2022, denying benefits and finding Plaintiff not disabled because he could perform other jobs existing in the national economy. R. 22-31. The Appeals Council denied review, and Plaintiff appealed. R. 8-10; ECF No. 2.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 22, 2019, the application date. R. 25. At step two, the ALJ found that Plaintiff

had the following severe impairment: recurrent arrhythmias. *Id.* At step three, the ALJ found that Plaintiff had no impairment or combination of impairments that was of such severity to result in listing-level impairments. *Id.*

After evaluating the objective and opinion evidence and Plaintiff's statements, the ALJ concluded that Plaintiff had the RFC to perform light work as follows:

> [T]he claimant is able to lift or carry, push, or pull twenty pounds occasionally and ten pounds frequently. The claimant can sit for six hours out of an eight-hour day, and stand or walk a combined total of six hours out of an eight-hour day. The claimant can occasionally climb ladders, ropes, and scaffolds. The claimant should have no more than occasional exposure to hazards.

R. 25. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. R. 28-29. However, based on the testimony of a vocational expert ("VE"), the ALJ found at step five that Plaintiff could perform the unskilled light jobs of Merchandise Marker, Assembler Small Products, or Cleaner/Housekeeping. R. 29-30. The ALJ determined the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles ("DOT"), except for the VE's testimony about types of climbing, as that testimony was based on his professional experience. R. 30. Based on the VE's testimony, the ALJ concluded these positions existed in significant numbers in the national economy. *Id.* Accordingly, the ALJ concluded Plaintiff was not disabled.

### III. Issues

Plaintiff raises two points of error in his challenge to the denial of benefits: (1) the ALJ's consistency analysis was improper; and (2) the ALJ failed at step five of the sequential evaluation. ECF No. 9.

### IV. Analysis

#### A. ALJ's Consistency Analysis Was Proper

Plaintiff argues the ALJ's consistency analysis was improper. In evaluating a claimant's

4

symptoms, the ALJ must determine whether the claimant's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record. Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029, at *7 (Mar. 28, 2016). If they are consistent, then the ALJ "will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work-related activities." *Id*. If they are inconsistent, then the ALJ "will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities." *Id*. Factors the ALJ should consider in determining whether a claimant's pain is in fact disabling include the claimant's attempts to find relief and willingness to try any treatment prescribed; a claimant's regular contact with a doctor; the possibility that psychological disorders combine with physical problems; the claimant's daily activities; and the dosage, effectiveness, and side effects of the claimant's medication. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012); *see also* SSR 16-3p at *7 (listing similar factors); 20 C.F.R. § 404.1529(c)(3).[2]

Consistency findings are "peculiarly the province of the finder of fact," and courts should "not upset such determinations when supported by substantial evidence." *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008) (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)). If the ALJ sets forth the specific evidence she relies on in evaluating the consistency of the claimant's subjective complaints with other evidence, the ALJ "need not make a formalistic factor-by-factor recitation of the evidence." *Keyes-Zachary*, 695 F.3d at 1167 (quotations omitted). "[C]ommon sense, not technical perfection, is [the reviewing court's] guide." *Id*.

---

[2] This evaluation, previously termed the "credibility" analysis, is now termed the "consistency" analysis. *See* SSR 16-3p (superseding SSR 96-7p). In practice, there is little substantive difference between a "consistency" and "credibility" analysis. *See Brownrigg v. Berryhill*, 688 F. App'x 542, 545-46 (10th Cir. 2017) (finding that SSR 16-3p was consistent with prior approach taken by Tenth Circuit). Therefore, Tenth Circuit decisions regarding credibility analyses remain persuasive authority.

Here, the ALJ found that Plaintiff's medically determinable impairments "could reasonably be expected to cause the alleged symptoms," but that his statements concerning the intensity, persistence, and limiting effects of those symptoms were "not entirely consistent with the medical evidence and other evidence in the record." R. 27. As support, the ALJ explained that Plaintiff's treatment history was not indicative of the alleged level of pain or limitation from impairment. *Id.* The ALJ then reviewed Plaintiff's treatment history for his cardiac problems. R. 27-28. The ALJ noted that, on September 18, 2019, Plaintiff was seen for complaints of fluttering heart, chest discomfort, and shortness of breath, and the emergency room doctor found no evidence for acute coronary syndrome. R. 27 (citing R. 253, 256, 260). A 48-hour Holter monitor showed basic rhythm and normal sinus rhythm, with frequent episodes of supraventricular tachycardia ("SVT") and no atrial fibrillation. *Id.* (citing R. 280, 284).

In November 2019, Plaintiff's cardiologist evaluated Plaintiff's condition, noting impressions of chest pain unspecified, tobacco use, SVT, palpitations, non-sustained ventricular tachycardia, and abnormal EKG. *Id.* (citing R. 303). Plaintiff's cardiologist prescribed Carvedilol and recommended lifestyle changes. *Id.* (citing R. 303). As part of the consultative exam process, Plaintiff underwent an echocardiogram in August 2020, which revealed that the overall left ventricular systolic function was mildly impaired with an ejection fraction between 45-50 percent. R. 28 (citing R. 312). In March 2023, Plaintiff underwent a second transthoracic echocardiogram as part of the consultative exam process, which showed a normal left ventricular size and ejection of 60 percent, along with mild mitral valve regurgitation. *Id.* (citing R. 322). The ALJ found persuasive the opinion of the state agency medical reviewers that Plaintiff could perform light work with occasional climbing of ladders, ropes, and scaffolds, and with avoidance of moderate exposure to hazards, as the opinion was consistent with the medical evidence, echocardiogram results, and Plaintiff's cardiac activities of daily living. *Id.* (citing R. 63-76, 79-95, 251-252, 312,

6

322). Regarding consistency, the ALJ noted that examinations showed only mild results, Plaintiff had not followed up with recommended testing or evaluation reportedly due to financial constraints, and the most recent echocardiogram showed an improvement in Plaintiff's ejection fraction to 60 percent. *Id.*

Plaintiff argues the ALJ's consistency analysis was erroneous, because the ALJ failed to (1) explain which alleged symptoms are inconsistent with what medical evidence, (2) note that Plaintiff's doctors believed his complaints; (3) acknowledge Plaintiff's inability to afford treatment; and (4) note Plaintiff's inability to tolerate prescribed medication.

### 1. Consistency of Alleged Symptoms

Plaintiff argues the ALJ's analysis insufficiently addressed which of his symptoms were inconsistent with the medical evidence. Plaintiff cites records indicating he suffered from shortness of breath, dizziness, chest pain/discomfort, fatigue, left arm pain, sweating, and fear, and he testified to limited activities of daily living. *See* R. 50-51, 53-56, 244, 251, 256, 258, 260, 263, 283, 298, 300-302.

Plaintiff's argument is unpersuasive. The ALJ noted Plaintiff's hearing testimony that he experienced shortness of breath, had chest pain, heart fluttering and skipping, and pressure in his chest. R. 26. The ALJ noted Plaintiff's alleged limited activities of daily living, such as difficulty performing chores, walking short distances, or lifting weights. *Id.* The ALJ found Plaintiff's statements inconsistent with the medical record, because Plaintiff's treatment history was limited and his most recent echocardiogram showed an improvement in ejection fraction to 60 percent. R. 27-28. Indeed, it appears from the record that Plaintiff did not follow up with his cardiologist or seek other cardiac care after November 2019. R. 252, 253-310. The ALJ also found the agency physicians' opinion that Plaintiff could perform a limited range of light work to be consistent with Plaintiff's cardiac activities of daily living and the echocardiogram results. R. 28 (citing R. 63-76,

79-95, 251-252, 312, 322). Plaintiff cites only to his own statements to suggest he was more limited than the ALJ found.

### 2. Exaggeration of Symptoms

Plaintiff argues that the ALJ insufficiently considered the fact that Plaintiff's treatment providers did not find his alleged symptoms to be exaggerated. *See* R. 300-305 (November 2019 cardiology office visit). Plaintiff's argument is unavailing. Even if Plaintiff is correct that his doctors believed his symptoms, he fails to point to any related error in the ALJ's analysis regarding Plaintiff's reports of pain and other symptoms. The ALJ correctly stated that Plaintiff's treatment history was limited, and he had not followed up with additional evaluation or treatment R. 27-28. The ALJ also correctly stated that Plaintiff's most recent echocardiogram showed a normal left ventricular size and ejection of 60 percent, which was an improvement over the previous echocardiogram ejection fraction of 45-50 percent. R. 28 (citing R. 312, 322). The ALJ did not rely on any alleged "exaggeration" of symptoms as part of his consistency analysis. Contrary to Plaintiff's argument, the ALJ was not required to find an absence of exaggeration of symptoms to find Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms to be inconsistent with the medical evidence.

### 3. Inability to Afford Treatment

Plaintiff contends the ALJ improperly faulted Plaintiff for not following up with his doctor, "reportedly due to financial constraints." R. 28. Plaintiff correctly states the inability to afford medical treatment is a legitimate excuse for not seeking further medical care. *Madron v. Astrue*, 311 F. App'x 170, 178 (10th Cir. 2009). However, after the December 2021 hearing, Plaintiff underwent another transthoracic echocardiogram as part of the consultative examination process, which showed a normal left ventricular size and ejection of 60 percent, mild mitral valve regurgitation, and normal left ventricular diastolic function. R. 28 (citing R. 322). The ALJ cited

8

this improved cardiac finding as evidence that Plaintiff's alleged symptoms were not as severe as alleged. *Id.* In the reply brief, Plaintiff argues that the improved finding proved only that his condition was not worse, but that he still experienced chest pain, fatigue, and limited mobility. ECF No. 16 at 2. However, the most recent echocardiogram provides objective evidence of improvement. The ALJ properly relied on this medical evidence, and the Court identifies no error in this finding.

### 4. Medication Side Effects

Finally, Plaintiff argues the ALJ insufficiently considered his inability to tolerate his prescribed medication. Plaintiff points to a Disability Report, in which he stated that he stopped taking prescribed Carvedilol for his heart problem because it "made me feel worse." R. 218. Plaintiff does not elaborate on this vague record in briefing, and it is entirely unclear what this statement means. In any event, as the ALJ noted, Plaintiff's heart condition was improved at the most recent echocardiogram. R. 28 (citing R. 322). The Court identifies no error in the ALJ's discussion of medications.

In sum, the ALJ's discussion of Plaintiff's subjective complaints and the objective evidence satisfies 20 C.F.R. §§ 404.1529(c)(3) and SSR 16-3. Plaintiff simply invites the court to re-weigh the evidence, which is not permitted. *See Hackett*, 395 F.3d at 1172; *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

### B.  ALJ's Step Five Analysis Was Proper

Plaintiff argues that the ALJ failed at step five, because of a discrepancy between his hypothetical to the VE and the final RFC. At the hearing, the ALJ asked the VE to assume that the hypothetical person "could tolerate no more than occasional exposure to hazards *like unprotected heights or dangerous moving machinery*." R. 60 (emphasis added). In the RFC, the ALJ found Plaintiff could have "no more than occasional exposure to hazards." R. 25. Plaintiff

argues the absence of the clarifying examples "like unprotected heights or dangerous moving machinery" in the RFC is reversible error, because the VE may have provided different testimony if the ALJ had instead propounded a hypothetical identical to the RFC.

Plaintiff's argument is unpersuasive. Contrary to Plaintiff's argument, the ALJ's RFC did not expand the types of hazards that Plaintiff to which Plaintiff must limit exposure. The hypothetical to the VE properly incorporated the "hazards" limitation. The two illustrative examples the ALJ provided – unprotected heights and dangerous moving machinery – did not limit the types of hazards that are subject to the "occasional" limitation. Plaintiff merely speculates that the VE interpreted the hypothetical as limited to those two hazards.

The Court finds the ALJ properly relied on the VE's testimony regarding the jobs available with the "hazards" limitation, regardless of the two illustrative examples of unprotected heights or dangerous moving machinery. *See Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000) (finding hypothetical proper where it included all the limitations ultimately found in the RFC assessment).[3]

**V.     Conclusion**

For the foregoing reasons, the Commissioner's decision finding Plaintiff not disabled is **AFFIRMED.**

**SO ORDERED** this 7th day of May, 2024.

_____
**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**

---

[3] Plaintiff additionally refers to the "mental CE" as evidence of his inability to work. ECF No. 9 at 11. However, Plaintiff did not undergo a mental consultative exam, and this reference appears to be an error.